OPINION OF THE COURT
Phyllis Gangel-Jacob, J.
By this combined proceeding petitioners seek (1) judgment pursuant to CPLR 3001, declaring null and void as contrary to law and lawful procedure the recent amendments to the regulations contained in 11 NYCRR part 65 which implement article 51 of the Insurance Law (No-Fault Automobile Insurance Law)[1] adopted and approved by respondents Neil D. Levin, as Superintendent of Insurance, and the State of New York Insurance Department (respondents), with an effective date of February 1, 2000, also known as Regulation 68, set forth in respondents’ notice of adoption dated November 3, 1999 (the New Regulations),[2] and (2) judgment pursuant to CPLR article 78 annulling the New Regulations on the grounds that respondents have failed to perform a duty enjoined upon them by law, have acted in excess of their jurisdiction, and the adoption and approval of the New Regulations was affected by errors of law and was arbitrary and capricious.
By legislative enactment in 1973, as amended, the system for compensating automobile accident victims was completely changed. No-fault reform virtually extinguished the common-law rights of ordinary citizens who are automobile accident victims to sue for damages in tort (unless there is “serious injury” or economic loss in excess of “basic economic loss,” as defined in the statute) in exchange for prompt uncontested statutorily assured payment of “first-party benefits” (as defined in the statute) for basic economic loss, without the necessity of *538 recourse to the courts (see, Montgomery v Daniels, 38 NY2d 41 [1975]; Walton v Lumbermens Mut. Cas. Co., 88 NY2d 211 [1996]; see also, Presbyterian Hosp. v Maryland Cas. Co., 90 NY2d 274 [1997]; Insurance Law §§ 5102, 5104). The law applies generally to all automobile accidents that occur throughout New York State and in some instances those that occur outside the State that involve New York citizens, and evinces the Legislature’s intention that first-party benefits under no-fault reform be made widely and promptly available to all injured persons within New York’s legislative jurisdiction (Insurance Law §§ 5103, 5107). The law refers to persons entitled to no-fault benefits as “covered persons” (see, Insurance Law § 5102 [j]). First-party benefits provide reimbursement to covered persons of up to $50,000 per person for medical expenses and loss of income due to automobile accident injuries (see, Insurance Law §§ 5102, 5104).
Under Insurance Law § 301 respondent Superintendent of Insurance is vested with the power to prescribe regulations interpreting the provisions of the Insurance Law provided that such regulations are not inconsistent with specific provisions of the law (see, Matter of New York Pub. Interest Research Group v New York State Dept. of Ins., 66 NY2d 444, 448 [1985]; Insurance Law § 301; see also, Insurance Law § 5103 [d]). The New Regulations are intended to repeal and replace the pre-existing No-Fault Automobile Insurance Law regulations promulgated at 11 NYCRR part 65 (the Current Regulations),[3] and include the following changes to the Current Regulations which are complained of by petitioners herein:
1. The maximum time within which eligible injured persons shall notify no-fault insurers of an accident has been reduced from 90 to 30 days, with the requirement of “written proof providing clear and reasonable justification for the failure to comply with such time limitation” (compare, Current Regulations [11 NYCRR] § 65.11 [m] [2], with New Regulations [11 NYCRR] § 65-1.1 [d] [Mandatory Personal Injury Protection Endorsement § I, Conditions, Notice]; § 65-2.4 [b]).
2. The maximum time within which eligible injured persons or their assignees shall submit written proofs of claim to insurers for medical treatment has been reduced from 180 to 45 days after the date services are rendered, with the requirement of “written proof providing clear and reasonable justifica *539 tion for the failure to comply with such time limitation” (compare, Current Regulations § 65.11 [m] [3], with New Regulations § 65-1.1 [d] [Mandatory Personal Injury Protection Endorsement § I, Conditions, Proof of Claim]; § 65-2.4 [c]); in addition a maximum time limit of 90 days for submission of written proofs of claim for work/earnings loss has been substituted for within a reasonable time as provided for in the Current Regulations (id.).
3. The method of payment of interest on overdue mandatory no-fault benefits to an applicant or an assignee is changed from a compound rate of 2% per month on all overdue payments to a simple interest rate of 2% per month (compare, Current Regulations § 65.15 [h] [1], with New Regulations § 65-3.9 [a]; see, Insurance Law § 5106 [a]).
4. A new provision is added that no attorney’s fees are to be paid by insurers if the charges by a health care provider who is an applicant for benefits exceed statutory limits (New Regulations § 65-4.7 [i]; cf., Current Regulations § 65.15 [i]; see, Insurance Law § 5106 [a]).
5. A new provision has been added to the arbitration forum procedures that “[t]he arbitrator may raise any issue that the arbitrator deems relevant to making an award that is consistent with the Insurance Law and department regulations” (compare, New Regulations § 65-4.5 [e]; § 65-4.6 [n], with Current Regulations § 65.17 [b] [4] [v]).
6. Under the direct payment provisions of the New Regulations the ability of nonlicensed providers of medical equipment to become assignees of covered persons/applicants is eliminated (compare, New Regulations § 65-3.11 [a], with Current Regulations § 65.15 [j] [1]).
Petitioners claim that the challenged regulations have a profound, impermissibly destructive impact on the careful balance crafted by the Legislature in enacting the No-Fault Law concerning the rights and interests of injured claimants and their providers on the one hand and those of insurance companies on the other, that they reduce the rights and increase the burdens on covered persons contrary to the intent of no-fault reform, and that the impacts of the proposed changes on small businesses and other members of the public were not properly or adequately identified, discussed or evaluated in respondents’ public notices as required by the provisions of the State Administrative Procedure Act. Petitioners assert the invalidity of the New Regulations for respondents’ failure to substantially comply with the requirements of the *540 State Administrative Procedure Act and in their failure to consider viable alternatives to the perceived problems of abuse, such as targeted enforcement. Petitioners assert that the New Regulations are not consistent with the provisions of Insurance Law article 51, contrary to respondents’ grant of authority under section 301 to prescribe regulations “not inconsistent” therewith.
Section 202 of the State Administrative Procedure Act establishes certain minimum procedures that an agency must follow when promulgating regulations, including the requirements that an agency publish in the New York State Register a notice of proposed rule making which affords the public an opportunity to submit comments on the proposed rule and, subsequently, a notice of adoption which includes an assessment of the public comment submitted on the proposed rule, to include “(i) a summary and an analysis of the issues raised and significant alternatives suggested by any such comments, (ii) a statement of the reasons why any significant alternatives were not incorporated into the rule and (iii) a description of any changes made in the rule as a result of such comments” (State Administrative Procedure Act § 202 [5] [b]). The standard to be met in determining the validity of an agency’s rule making under the statute is “substantial compliance” (State Administrative Procedure Act § 202 [8]). State Administrative Procedure Act § 202 (1) (f) requires the agency’s notice of proposed rule making, among other things, to include a regulatory impact statement (RIS) prepared pursuant to section 202-a, and a regulatory flexibility analysis (RFA) prepared pursuant to section 202-b. State Administrative Procedure Act § 202-a, entitled “Regulatory impact,” provides, in part:
“1. In developing a rule, an agency shall, to the extent consistent with the objectives of applicable statutes, consider utilizing approaches which are designed to avoid undue deleterious economic effects or overly burdensome impacts of the rule upon persons[4] * * * directly or indirectly affected by it or upon the economy or administration of state or local governmental agencies * * *
“2. Each [RIS] shall contain [see also, State Administrative Procedure Act § 202-a (3)] * * *
*541 “(c) * * * A statement indicating the projected costs (i) for the implementation of, and continuing compliance with, the rule to the state, its local governments and regulated persons and (ii) to the agency for the implementation and continued administration of the rule * * *
“(d) * * * A statement describing the need for any reporting requirements, forms and other paperwork, which would be required as a result of the rule [and] * * *
“(f) * * * A statement indicating whether any significant alternatives to the rule were considered by the agency, including a discussion of such alternatives and the reasons why they were not incorporated into the rule.” (Emphasis added.)
State Administrative Procedure Act § 202-b, entitled “Regulatory flexibility for small businesses,” provides, in relevant part:
“1. In developing a rule, the agency shall consider utilizing approaches that will accomplish the objectives of applicable statutes while minimizing any adverse economic impact of the rule on small businesses and local governments. Consistent with the objectives of applicable statutes, the agency shall consider such approaches as * * *
“(a) the establishment of differing compliance or reporting requirements or timetables that take into account the resources available to small businesses and local governments * * *
“2. * * * Each [RFA] shall contain:
“(a) a description of the types and an estimate of the number of small businesses and local governments to which the rule will apply;
“(b) a description of (i) the reporting, recordkeeping and other compliance requirements of the rule, and (ii) the kinds of professional services that a small business or local government is likely to need in order to comply with such requirements;
“(c) an estimate of the initial capital costs and an estimate of the annual cost of complying with the rule, with an indication of any likely variation in such costs for small businesses or local governments of different types and of differing sizes;
“(d) an assessment of the economic and technological feasibility of compliance with such rule by small businesses and local governments;
“(e) an indication of how the rule is designed to minimize any adverse economic impact of such rule on small businesses and local governments, including information regarding whether the approaches suggested in subdivision one of this section or other similar approaches were considered * * *
*542 “3. (a) This section shall not apply to any rule * * * which does not impose an adverse economic impact on small businesses or local governments and which the agency finds would not impose reporting, recordkeeping or other compliance requirements on small businesses or local governments. The agency’s finding and the reasons upon which the finding was made, including what measures the agency took to ascertain that the rule would not impose such compliance requirements, or adverse economic impact on small businesses or local governments, shall be included in the rule making notice as required by section two hundred two of this chapter.” (Emphasis added.)
Respondents published a notice of proposed rule making in the New York State Register on April 21, 1999 (at 7). Included in that notice was respondents’ RIS which in relevant parts sets forth: “No fault insurance was introduced to rectify many problems that were inherent in the existing tort system utilized to settle claims, and to provide for prompt payment of health care and loss of earnings benefits” (id., at 8). Ostensibly in aid of this principle, the reductions of the time within which to file (1) a notice of accident to 30 days, (2) proofs of claim for medical and other necessary expenses to 45 days, and (3) proofs of claim for work loss benefits to 90 days, were justified as enabling insurers to more effectively, properly, or fairly, evaluate or verify no-fault claims while still giving claimants “reasonable” time periods within which to give notice or submit proofs (id., at 9); by giving insurers the right to conduct examinations under oath, insurers and self-insurers “will be given an effective tool to combat fraud and abuse” (ibid.); and by changing the 2% interest charged on overdue payments from compound to simple interest the insurers’ “penalty” will be reduced “while maintaining its effectiveness in deterring late payment of claims” because when the “penalty” was first introduced, inflation and interest rates “were much higher than they are today” (ibid.). Respondents’ notice of proposed rule making discussed costs and any increased paperwork only insofar as the new rules would affect insurers and self-insurers but no others, and recites that “[t]he proposed amendment will not result in any additional paperwork than currently required” and “[n]o viable alternatives were considered” (id., at 10). In addition, the REA published by respondents sets forth (ibid.): “The Insurance Department finds that this rule would not impose reporting, recordkeeping or other compliance requirements on small business [sic]. The basis for this finding is that this rule is directed to property/casualty insurance companies licensed to do busi *543 ness in New York State and. self-insurers, none of which fall within the definition of ‘small business.’ ”
Respondents published a notice of adoption in the New York State Register on November 3, 1999 (at 3). According to that notice, the Insurance Department received more than 500 comments from the public on the proposed New Regulations. There is no elucidation of what the proportion of favorable comments is to unfavorable comments. The notice of adoption nevertheless advises, in relevant part: “The changes to the proposed * * * [Regulation 68] are not substantive and do not require any changes to the previously filed [RIS] * * * [and RFA]” (id., at 4). Following a one-paragraph summary of the public’s many objections to the proposed New Regulations, which insofar as they are set forth include the objections exhibited in this proceeding, the notice of adoption responded in relevant part (ibid.):
“The reductions in the amount of time to submit any no-fault claims, health provider bills or cost [sic] wages claims were introduced in order to allow insurers an opportunity to review and evaluate no-fault claims in a more timely and efficient manner. Any applicant’s claim which is denied because it was submitted after the time limit expired will have their claims reevaluated if a reasonable basis for non-compliance with the time requirements can be demonstrated * * *
“Currently there is no established time frame within which an injured party may submit a claim for lost wages. In the interests of providing a speedier disposition of no-fault claims, 90 days has been established as a reasonable time within which an applicant for lost wages will be able to comply * * *
“Compound interest payments are not prescribed by statute. The Department’s decision is based on the current economic environment and the fact that the interest payments rule has * * * not been adjusted in over 20 years * * *
“Examinations under oath are costly procedures that are generally limited to situations where fraud is suspected. Other policy provisions in the automobile liability insurance policy already contain this option which may be exercised by the insurer,” and concludes, “[t]he Department has not made any changes to the regulation based on the above comments” (id., at 5). It is significant that some of the public comments brought forth in this proceeding were not addressed or responded to in the notice of adoption; also no suggested alternatives were addressed.
*544 As set. forth in Matter of Industrial Liaison Comm. v Williams (72 NY2d 137, 144), “[t]he promulgation of a new rule must be done in substantial compliance with the State Administrative Procedure Act’s provisions” and (id., at 143-144) “Regulatory promulgation consistent with the provisions of [State Administrative Procedure Act] is not a matter which rests within the particular and specialized expertise of the Department. Interpretation of [SAPA] is not dependent on an understanding of technical data or underlying operational practices. The statute outlines uniform administrative procedures that State agencies must follow in their rule making, adjudicatory and licensing processes and that courts review in their usual de novo adjudicative function. Thus, the legislative direction to these agencies is compliance, not implementation. As specialized knowledge is not necessarily implicated, the courts use their own competence to decide issues of law raised, since those questions are of ordinary statutory reading and analysis * *. * [T]he principle of deference [to an agency’s special expertise] should be applied only where such expertise is relevant. It is not in this case.” (Cf., Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980].)
Applying this principle I find as a matter of law that the New Regulations were not promulgated in substantial compliance with the requirements of State Administrative Procedure Act.
Under the clear, unequivocal language of the statute respondents had the obligation in their RIS to “consider utilizing approaches which are designed to avoid undue deleterious economic effects or overly burdensome impacts of the rule upon persons * * * directly or indirectly affected by it” (State Administrative Procedure Act § 202-a [1]). To review just some of the requirements imposed by the New Regulations: Claimants and their attorneys must comply with a 30-day deadline for filing notice of an accident to be eligible for first-party benefits; claimants and their health service providers and billing companies must comply with a 45-day deadline for filing proofs of claim to receive first-party benefits; claimants must comply with a 90-day deadline for filing proofs of work loss;[6] claimants’ attorneys will be denied their statutory attorneys’ *545 fees if a challenged charge is found only to be partially valid; and applicants for first-party benefits shall be required to undergo examinations under oath at the insurer’s and self-insurer’s discretion or to respond to any issue deemed relevant by an arbitrator no matter how the contestants have charted their course, all in order to be able to receive the prompt, uncontested statutorily assured payments of first-party benefits to which they are entitled under the No-Fault Law in return for which their right to go to court in the first instance was forfeit.[7] In addition, under the New Regulations penalties to insurers and self-insurers have been reduced, the effect of which is to dilute the otherwise strong disincentive to insurers to engage in dilatory claims payment practices.
The rules unquestionably will have far-reaching effects and will directly impact upon all persons involved, not just insurers and self-insurers. That respondents were aware of the direct and far-reaching effects the New Regulations would have on applicants for no-fault benefits and their need to address such effects is borne out by respondents’ own Circular Letter which not only acknowledges the difficulty applicants will have in complying with the rules, but also tacitly acknowledges that the “new notice requirements” could be utilized by insurers and self-insurers to avoid the payment of claims (see, Circular Letter, at 1).
I find as a matter of law that respondents have violated the State Administrative Procedure Act in their promulgation of the New Regulations at least in the following ways (this list not being exhaustive):
1. Respondents’ RIS did not address or assess the projected costs to claimants and their providers in complying with the new requirements imposed as a regulatory condition of their eligibility to receive first-party benefits. As petitioners have pointed out, “[Respondents confuse ‘speculative’ with lack of specificity. The Legislature, recognizing that not all future costs can be specified, amended [State Administrative Procedure Act] § 202-a in 1990 to state that where a full cost estimate cannot be given, the agency must provide a ‘best estimate’ ” (petitioners’ reply mem of law, at 10). It is of no *546 small significance that respondents’ “Regulatory Impact Statement For The Twenty-Fourth Amendment of 11 NYCRR 65 (Regulation 68)” (amended verified petition and complaint, exhibit H) acknowledges that applicants for no-fault arbitration are required to pay the filing fees for such arbitration, and addresses (rightly or wrongly) the impact of that particular regulation on health care providers who submit claims for payment as small businesses entitled to consideration in that RFA.
2. Respondents similarly failed to address or consider whether additional paperwork would necessarily be generated by covered persons by reason of the new regulatory requirements imposed on them.
3. Respondents failed to provide a statement of alternatives in their RIS, including a discussion of why significant alternatives were not incorporated into the rule, as required by State Administrative Procedure Act § 202-a (2) (f) (see also, § 202-a [3] [g]). Under any analysis of the notices filed by respondents, there is no indication that out of the more than 500 comments received any alternatives were identified, considered, analyzed or found to be viable. The agency’s bald comment that “no viable alternatives were considered” does not satisfy the statute in this case. Indeed, the irrationality of such position is demonstrated by one very simple example proffered by petitioners that “respondents cannot reasonably state that between 180 and 45 days no viable alternatives could be considered * * * Unless the numbers have some special magical powers, the agency clearly had alternatives” (petitioners’ reply mem of law, at 11). Moreover, respondents gave no reasons why any significant alternatives were not incorporated into the rule, contrary to the requirements of State Administrative Procedure Act § 202 (5) (b) (ii).
4. The importance that the Legislature placed on the RIS may be found in the requirement that an agency must publish a revised RIS when the “information in the statement is inadequate or incomplete” (State Administrative Procedure Act § 202-a [6] [i]). Here respondents’ RIS was decidedly incomplete in failing to address the direct effects of the New Regulations upon covered persons, notwithstanding respondents’ knowledge of such effects as confirmed by the Circular Letter and the many public comments they received. Nevertheless respondents did not publish a revised RIS.
5. Respondents did not publish an RFA as required under State Administrative Procedure Act § 202-b. Respondents have recognized that health care and other providers who submit *547 claims for payment under the no-fault insurance system are small businesses to which the requirements of section 202-b apply. For purposes of the RFA, “ [consistent with the objectives of applicable statutes, the agency shall consider such approaches as * * * the establishment of differing compliance or reporting requirements or timetables that take into account the resources available to small businesses and local governments” (State Administrative Procedure Act § 202-b [1]). This command is further articulated in section 202-b (2) (e) which requires each RFA to include “an indication of how the rule is designed to minimize any adverse economic impact of such rule on small businesses and local governments, including information regarding whether the approaches suggested in subdivision one of this section or other similar approaches were considered.” An agency is relieved of the duty to produce an RFA on the impact of a rule on small businesses only if the rule does not impose an adverse economic impact on small businesses and would not impose reporting, recordkeeping or other compliance requirements on small businesses. Any findings by an agency in this regard, and the reasons therefor must be included in the notice of rule making (State Administrative Procedure Act § 202-b [3] [a]). Respondents’ RFA simplistically advises: “The Insurance Department finds that this rule would not impose reporting, recordkeeping or other compliance requirements on small business [es]” and recites the basis for such finding to be that the rule is directed to insurers who are not small businesses. This directly contradicts the statutory requirement. As I have already found, the New Regulations will have significant direct impact on small businesses which rely on the no-fault system for reimbursement for their services to accident victims, including drastic changes in their notification, recordkeeping and billing procedures. In this regard, respondents’ reliance upon the case of Matter of Pacific Salmon Unlimited v New York State Dept. of Envtl. Conservation (208 AD2d 241 [3d Dept 1995]) for the argument that an RFA considering these small businesses is irrelevant because any impact upon them is “indirect” is misplaced, and their position that the New Regulations would not impose reporting, recordkeeping or other compliance requirements upon them is intellectually misleading. I agree with petitioners that in promulgating the New Regulations respondents have placed an enormous new burden on accident victims and small health providers, ostensibly in an effort to prevent fraud, without first making an effort to determine which or how many of them actually are contributing to the problem.
*548 I find therefore that the New Regulations are invalid, null and void and, as a matter of law, their promulgation by respondents was arbitrary, capricious and an abuse of discretion by reason of respondents’ failure to substantially comply with the clear mandates of the State Administrative Procedure Act.
Accordingly, the petition is granted to the extent that it is ordered, adjudged and declared that the recent amendments to the regulations contained in 11 NYCRR part 65 (hereinabove described and referred to as the New Regulations or Regulation 68) are null and void as contrary to law and lawful procedure, and their promulgation in violation of the provisions of the State Administrative Procedure Act was unlawful, arbitrary, capricious and an abuse of discretion.
[Portions of opinion omitted for purposes of publication.]

. The Comprehensive Motor Vehicle Insurance Reparations Act codified at article 51 of the Insurance Law is popularly known and referred to as the “No-Fault Law” or the “No-Fault Automobile Insurance Law” (see, Stocker, Gemma and Hershman, 1984 Codification Note, McKinney’s Cons Laws of NY, Book 27, Insurance Law art 51, at 390).

. The text of the part 65 New Regulations is annexed as exhibit A to the amended verified petition and complaint.

. The text of the Current Regulations is annexed as exhibit K to the amended verified petition and complaint.

. “ ‘Person’ means any individual, partnership, corporation, association, or public or private organization of any character other than an agency engaged in the particular rule making, declaratory ruling, or adjudication” (State Administrative Procedure Act § 102 [6]).

. That on their face those drastically shortened time periods are burdensome and unreasonable in the circumstances is established merely by comparing the time limits set by the Legislature in similar situations as appropriate for the conduct of early investigation of claims to protect against fraud, while at the same time placing a not unreasonable burden on claim *545 ants (see, e.g., Insurance Law § 5208; Matter of Hempstead Gen. Hosp. v MVAIC, 97 AD2d 544 [2d Dept 1983]; General Municipal Law § 50-e).

. Petitioners point out that a covered person who loses benefits due to a late notice that is not excused (in the insurer’s discretion) does not receive a revival of the common-law tort remedy lost by reason of article 51 of the Insurance Law.