David C. WAHL, Plaintiff,

v.

Clive LOTHIAM, Judith H. Gold and
Toyota Motor Credit Corporation,
Defendants.

No. 01 CV 6439(VM).

United States District Court,
S.D. New York.

Dec. 17, 2002.

Georgia S. Alikakos, London, Fischer,
L.L.P., New York City, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff David Wahl ("Wahl") brought
this action against defendants Clive Loth-
iam ("Lothiam"), Judith Gold ("Gold") and
Toyota Motor Credit Corporation ("Toyo-
ta," and together with Lothiam and Gold,
the "Defendants") alleging personal inju-
ries arising out of an automobile accident
that occurred on March 8, 1998 involving
Wahl, Lothiam, Gold and a car driven by
Gold and owned by Toyota. Wahl claims
that as a result of the accident, which he

contends occurred due to the negligence of the various Defendants without any fault of his own, he sustained "serious injuries" as such term is defined by § 5102(d) of New York State's Insurance Law ("NYIL"). Following the close of discovery, each of the Defendants filed a motion for summary judgment. For the reasons described below, all of the motions are DENIED.

## I. *DISCUSSION*

### A. *STANDARD OF REVIEW*

A motion for summary judgment may be granted only if the court concludes on the basis of the record before it that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The role of the Court is to determine whether there are any genuine issues of material fact to be tried, not to decide them (*see Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994)), while resolving ambiguities and drawing all reasonable inferences in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ In a situation like the one at bar involving allegations of personal injuries sustained in an automobile accident, the moving party bears the initial burden of demonstrating the absence of a genuine issue as to the existence of a "serious injury," *Madden v. Lee,* 2002 WL 31398951, at *4 (S.D.N.Y.2002), and is required to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [that] show that there is no genuine issue as to" the exis-

tence of such an injury. Fed.R.Civ.P. 56(c). In response, the party opposing the motion must demonstrate through admissible evidence that an issue of fact exists as to whether he suffered a "serious injury" by reason of the car accident. *See Madden,* 2002 WL 31398951, at *4. He must do this by going "beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)).

Because this action is based on diversity jurisdiction, the applicable substantive law is that of the State of New York. *See, e.g., Lee v. Bankers Trust Co.,* 166 F.3d 540, 545 (2d Cir.1999). New York's "no-fault" insurance law places limits on any recovery by a person involved in an automobile accident. The governing statute states:

> Notwithstanding any other law, in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss.

N.Y. Ins. L. § 5104(a).

■ Enacted nearly thirty years ago, the "no-fault" law was designed to provide automobile accident victims with "prompt uncontested statutorily assured payment of 'first party benefits' [such as reimbursement for medical expenses and loss of income] ... for basic economic loss without the necessity of recourse to the courts." *Medical Society of the State of New York v. Levin,* 185 Misc.2d 536, 712 N.Y.S.2d 745, 747 (N.Y.Sup.Ct.2000). In exchange, victims lost their common law right to sue for damages for personal injuries unless they could prove a serious injury, as defined by the statute. The law was

intended to remove the vast majority of claims arising from vehicular accidents from the sphere of common-law tort litigation, and to establish a quick, sure, and efficient system for obtaining compensation for economic loss suffered as a result of such accidents. *See Walton v. Lumbermens Mut. Cas. Co.,* 88 N.Y.2d 211, 644 N.Y.S.2d 133, 135, 666 N.E.2d 1046 (1996).

## B. *"SERIOUS INJURY" ANALYSIS*

The Court begins its analysis by recognizing that in a personal injury action arising out of a motor vehicle accident, New York courts have required plaintiffs to demonstrate a serious injury in order to recover damages. *See Licari v. Elliott,* 57 N.Y.2d 230, 455 N.Y.S.2d 570, 573, 441 N.E.2d 1088 (1982). A serious injury under this statute is defined as:

> [A] personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. L. § 5102(d).

▮ To establish that a serious injury has occurred, a plaintiff must present

"competent medical evidence based upon objective medical findings and diagnostic tests." *Eisen v. Walter & Samuels,* 215 A.D.2d 149, 626 N.Y.S.2d 109, 109 (1995). Here, both sides appear to concede that the *physical* injuries sustained by Wahl in the accident would not qualify as serious within the meaning of NYIL § 5102(d).[1] The dispute before the Court relates to the parties' divergence over whether psychological effects arising from an automobile accident may qualify, if severe enough, as a serious injury within the meaning of the no-fault statute. On this point, New York courts have recognized that an emotional injury, causally related to an automobile accident, can constitute a serious injury sufficient to support a cause of action to recover damages for noneconomic loss.[2] *See Chapman v. Capoccia,* 283 A.D.2d 798, 725 N.Y.S.2d 430, 432 (2001); *Sellitto v. Casey,* 268 A.D.2d 753, 702 N.Y.S.2d 177, 180 (2000); *Quaglio v. Tomaselli,* 99 A.D.2d 487, 470 N.Y.S.2d 427, 429 (1984). In addition, two district courts in the Second Circuit have held that Post–Traumatic Stress Disorder ("PTSD") or clinical depression falls within the definition of a serious injury under NYIL § 5102(d). *See Kane v. United States of America,* 189 F.Supp.2d 40, 52 n. 6 (S.D.N.Y.2002) (referring to clinical depression as serious injury under the NYIL); *Thomas v. National Car Rental Systems Inc.,* 1988 WL 28097, at *2 (E.D.N.Y.1988) (holding that PTSD is a serious injury under the NYIL). Thus, the record in the instant case must be examined to determine whether "competent medical evidence"

---

**1.** Because the Court finds Wahl meets the threshold for a serious injury due to his alleged psychological injuries, it finds it unnecessary to address directly whether Wahl's physical injuries would qualify as serious injuries as well.

**2.** Noneconomic loss is defined as "pain and suffering and similar non-monetary detriment." N.Y. Ins. L. § 5102(c).

exists which supports "objective medical findings", *see Eisen*, 626 N.Y.S.2d at 109, that Wahl suffered some type of serious psychological injury from the automobile accident here at issue.

The record in the instant case contains the written affirmations of six different medical specialists. Wahl submitted affirmations from three different psychiatrists, two of whom were assigned by Wahl's auto insurance carrier to examine Wahl pursuant to the "no fault/PIP" provisions of his insurance policy. The first psychiatrist, Dr. Lawrence Schaefer, conducted an Independent Medical Examination of Wahl on August 11, 1998, in which he diagnosed Wahl with PTSD and concluded that Wahl's "symptoms are wholly and causally related to the motor vehicle accident...." (Attached as Exhibit F to Affirmation of Steven Marchelos, dated September 7, 2002 ("Marchelos Aff.").) The second psychiatrist, Dr. Kenneth Rubin, also performed an independent psychiatric examination of Wahl at the request of Wahl's insurance carrier on two different dates, October 18, 1999 and September 26, 2000. His diagnosis was that Wahl had Adjustment Disorder with Depression, Panic Attacks without Agoraphobia, and PTSD, but that only the latter two disorders were solely related to the accident. Dr. Rubin also concluded that all three psychiatric problems were resolved or improving. (Marchelos Aff. Ex. F.)

The third psychiatrist, Dr. Robert Goldstein, examined Wahl on February 5, 2002, and reported his findings and conclusions in a Psychiatric Report dated February 12, 2002, with an update submitted on August 19, 2002. In his report, Dr. Goldstein diagnosed Wahl as suffering from both PTSD and Panic Disorder, and concluded that Wahl's psychiatric condition was permanent and irreversible. Dr. Goldstein further concluded that Wahl's PTSD was caused by the accident, while his Panic Disorder was greatly exacerbated by the accident. (Marchelos Aff. Ex. I.)

On Defendants' side, the three medical professionals consisted of a psychologist, a neurologist, and an orthopedist. While neither the neurologist nor the orthopedist found any significant injuries, (Attached as Exhibits C and E to Motion for Summary Judgment filed by Clive Lothiam, dated July 9, 2002 ("Lothiam Mot.")), Dr. Michael Rosenfeld, the psychologist, concluded that Wahl had suffered from PTSD, which was causally related to the accident. However, Dr. Rosenfeld found the condition resolving and concluded that, from a psychological viewpoint, Wahl had no accident-related disability. (Lothiam Mot. Ex. D.)

■ After examining these reports and the other evidence in the record, the Court finds that Wahl has established the existence of genuine disputes as to issues of material fact sufficient to permit the case to be submitted to a jury. In making such a finding, the Court relies heavily on *Chapman v. Capoccia*, a recent Appellate Division case in which the facts and legal issues in dispute were highly similar to the ones at bar.

In *Chapman*, the Appellate Division found that the plaintiff, an injured party in an automobile accident, had established a prima facie case on the issue of a serious emotional injury based on the testimony of plaintiff's psychiatrist, who diagnosed plaintiff with PTSD after reviewing plaintiff's full history and noting that plaintiff suffered from various symptoms such as anxiety, nightmares and impotence. In addition, the testifying psychiatrist found it significant that plaintiff's orthopedist had made the original observation of plaintiff's emotional problems and had referred plaintiff to a psychiatrist as a result. The *Chapman* court further noted that some of

plaintiff's symptoms were objectively observed by plaintiff's treating physicians, while other symptoms were objectively established by testimony from the plaintiff and his wife.

In the case at bar, the affirmations from all three psychiatrists on Wahl's side *and* the psychologist employed by Defendants confirm that Wahl developed PTSD as a result of the car accident. As in *Chapman*, all four doctors relied on Wahl's medical history as well as Wahl's symptoms, which included anxiety, nightmares, and impotence, to make this diagnosis. Although there was no uniformity of opinion among the four doctors as to whether or not Wahl's condition is permanent,[3] there is enough evidence on the record from which a reasonable jury may be persuaded that the condition is permanent. Furthermore, as in *Chapman*, Wahl was originally diagnosed with depression and referred to a psychiatrist by his original treating physician, Dr. Burt Frank,[4] (Attached as Exhibit G to Motion for Summary Judgment filed by Judith Gold, dated July 15, 2002), indicating that an independent medical evaluation led to the discovery of Wahl's condition as opposed to Wahl or his lawyer conceiving of the idea themselves.

Wahl's symptoms were also objectively observed by the doctors who saw him. The notes of Dr. Stuart Kushner, who was Wahl's first treating psychiatrist, documented a number of symptoms connected with PTSD, (Marchelos Aff. Ex. E), while Dr. Ashok Patel, who took over as Wahl's treating psychiatrist after Dr. Kushner retired, indicated in his notes that Wahl exhibited signs of anxiety and related symptoms during treatment sessions. (Marchelos Aff. Ex. G.) Defendants ask the Court to disregard Wahl's own testimony as self-serving, but it is worth noting that such testimony mentions symptoms consistent with those described or observed by the physicians mentioned above. Wahl's testimony under oath that he has been impotent since the accident may also lend some weight to his psychological claims. While conceivably a person could fabricate a claim of impotence, such a lie would hardly be necessary to establish a prima facie case and yet Wahl's willingness to testify to such a severe and embarrassing condition is a matter the credibility and weight of which should be resolved by a jury.

---

3. Dr. Schaefer merely stated that Wahl "had not achieved maximum benefit from either his physical or psychiatric treatment," (Marchelos Aff. Ex. F) while Dr. Rubin concluded that Wahl had "reached maximum medical improvement" and was "not having any more post traumatic stress ..." (Marchelos Aff. Ex. F) and Dr. Rosenfeld concluded that Wahl had "no expectancy of permanency from the current symptom profile and his prognosis is optimistic." (Lothiam Mot. Ex. D.) However, Dr. Goldstein concluded that Wahl "was left with residual symptoms and restrictions, indicating that his psychiatric condition is permanent and irreversible." (Marchelos Aff. Ex. I.)

4. It is unclear from the record exactly what type of doctor Dr. Frank is. One defense counsel refers to Dr. Frank in one document before the Court as a neurologist, and then later on in another document calls him a chiropractor. Wahl testified that Dr. Frank was a neurologist. Dr. Frank's own medical reports list him as a Doctor of Osteopathy, which is a recognized degree by New York State that qualifies Dr. Frank as a licensed physician. *See* N.Y. Education Law § 6524 (McKinney 2001). While neither side raises Dr. Frank's professional status as an issue, the Court views Dr. Frank's professional background as important in determining the significance of his referral of Wahl to a psychiatrist. Following New York State law, the Court considers Dr. Frank to be a licensed medical professional, and consequently views his referral as similarly significant to the one made by the orthopedist in *Chapman*.

In addition, a diagnosis of Wahl as having PTSD is reasonable in the context of the accident in which he was involved. For a patient to be diagnosed with PTSD, he must have been exposed to a traumatic event as a result of which he reasonably believed he was going to die or suffer serious injury. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 427–29 (4th ed.1994). Reading the testimony in the record from all three participants in the accident, the Court observes that the accident was traumatic and could have caused any reasonable person to fear for his life. Moreover, following the accident, the doctors treating Wahl documented in their notes the presence of many of the symptoms required to make a diagnosis of PTSD. These circumstances provide a reasonable medical foundation for diagnosing Wahl with PTSD, and do not indicate that Wahl's claims are merely an exaggeration of an otherwise insignificant car accident.

In light of the record discussed above, the Court finds that there is enough evidence presented on the record to enable a reasonable jury to conclude that Wahl suffered a "serious injury" as such term is defined under NYIL § 5102(d). Accordingly, the Court denies Defendants' motion for summary judgment.

### III. *CONCLUSION AND ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that defendant Lothiam's motion for summary judgment is denied in its entirety; and it is further

**ORDERED** that defendant Gold's motion for summary judgment is denied in its entirety; and it is further

**ORDERED** that defendant Toyota's motion for summary judgment is denied in its entirety; and it is finally

**ORDERED** that the parties appear for a status conference with the Court on January 10, 2003 at 9:00 a.m. to discuss scheduling and preparation of documents for trial.

**SO ORDERED.**