OPINION OF THE COURT
Michael D. Stallman, J.
This CPLR article 78 proceeding challenges the City’s adoption of a new schedule of fines applicable to licensed and unlicensed street vendors. By separate motion, petitioner seeks a preliminary injunction against the schedule’s implementation. Petitioner claims that the subject fines are arbitrary and capricious, contrary to law and an abuse of discretion, inter alia, as constitutionally excessive and defectively promulgated.
Background
On April 21, 2005, the New York City Environmental Control Board (ECB) adopted the subject schedule of fines and caused it to be published in the City Record on June 20, 2005. (15 RCNY 31-107.)
The schedule increased the penalties imposed on street vendors for violations of the New York City Health Code and other Administrative Code of the City of New York violations. Among other increases, the schedule increased the maximum penalty from $250 to $1,000. Petitioners contend that the schedule is arbitrary and capricious; that it imposes excessive fines, in violation of the Eighth Amendment of the United States Constitution and article I, § 5 of the New York State Constitution; and that it was adopted in violation of the City Administrative Procedure Act (CAPA) (NY City Charter § 1041 et seq.).
Petitioner Street Vendor Project alleges that it is a membership-based project of the Urban Justice Center, comprised of more than 300 New York City street vendors (apparently licensed and unlicensed) who sell food and merchandise on the city streets. Petitioner Moussa, a member of the Project, alleges that he supports himself and his family exclusively through street vending of watches, and claims a total 2004 *980 income of approximately $11,000. Petitioner Alali alleges that he is a member of the Project and that he supports himself and his family solely through street vending of hot dogs and soda, and claims a total 2004 income of approximately $10,000. Respondent Lloyd is the Commissioner of the Department of Environmental Protection, and the chairperson of ECB. ECB, created pursuant to chapter 57 of the New York City Charter, is responsible for enforcing all laws and rules pertaining to “the regulation of street peddling.” (NY City Charter § 1404 [c] [1] [e].)
On July 17, 2003, ECB gave notice that it was increasing the penalties for violations of the City’s laws regulating street vendors. For approximately 20 years, the penalty for the first violation in any 24-month period had been $25; the penalty for the second violation, $50; for the third violation, $100; and for the fourth or subsequent violation, $250.[1] Under the July 17, 2003 proposed revised schedule, the penalties for the first and second violations within a 24-month period were to be doubled; the penalty for a third violation was increased to $250; and the penalty for a fourth, or subsequent violation, was raised to $1,000. In 2004, three street vendors, including petitioner Moussa (with his given and family names reversed), challenged the increases in an article 78 proceeding. (Ousmane v City of New York, Sup Ct, NY County, Index No. 402648/04.) They contended that the increases were arbitrary and capricious, and that the City’s failure to provide notice of its intent to implement the increases had violated the City Administrative Procedure Act. By order dated September 28, 2004, as amended on October 4, 2004, Justice Edmead granted petitioners a preliminary injunction, enjoining the City from enforcing the July 2003 increases, and from refusing to renew vending licenses for failure to pay such increased fines. By a further, clarifying order dated October 26, 2004, Justice Edmead held that the challenged increases constituted an improper rule change. (Ousmane v City of New York, Sup Ct, NY County, Index No. 402648/ 04.) Justice Edmead held, inter alia, that the increased fine schedule constituted a rule, that CAPA applied to it as a rule change, and that the proposed change was null and void in the absence of the notice, hearing and publication required by CAPA.
*981 On October 15, 2004, ECB published in the City Record notice of its intent to adopt a penalty schedule that, as applicable to street vendors, was identical to that which had been at issue before Justice Edmead. At a public hearing, held on November 18, 2004, street vendors testified that a $1,000 fine would deprive many of them of their livelihoods, because vendors generally earn less than $11,000 a year, and are required to pay such fines as they have accumulated, before renewing their yearly licenses. Shortly thereafter, ECB voted to postpone consideration of the revised penalty schedule for street vendors. On March 17, 2005, however, ECB published notice of its intent to implement a second, revised schedule, i.e., the subject schedule. The schedule provides for penalties of $50 for the first violation within a 24-month period; $100 for the second; $250 for the third; $500 for the fourth; $750 for the fifth; and $1,000 for the sixth and subsequent violations. Thus, in comparison to the first revised schedule as proposed on October 15, 2004, the schedule decreases the penalties for a fourth and fifth violation by $500 and $250, respectively. In comparison to the schedule of fines that had been in use for the preceding 20 years, however, the schedule doubles the fines for the first and second violations, and increases the penalties for the third violation from $100 to $250, for the fourth violation from $250 to $500, for the fifth from $250 to $750, and for the sixth and subsequent violations from $250 to $1,000.
At the subsequent public hearing, held on April 18, 2005, numerous vendors testified that, because they receive multiple citations, the deferral of the $1,000 penalty from the fourth violation, as ECB had previously proposed, to the sixth would make no effective difference; and that adoption of the schedule would deprive them of their livelihoods. The Project testified that, on average, its members had received seven tickets in 2004, and that, on average, the Project’s members had earned $8,400, with which to pay taxes, pay fines, and support their families. Under the schedule, the penalties for seven violations would amount to $3,650. The penalties for 14 violations within a 24-month period would amount to $10,650. Although petitioners assert that vendors may receive more than one ticket at a time, or on a single date, the City represents that, for implementation of the escalating fine schedule for repeat offenses, all violations by a vendor cited on a given date are treated as one.
On April 21, 2005, ECB voted to approve the schedule, and on June 20, 2005, it published a notice in the City Record that the schedule would become effective on July 21, 2005.
*982 I
Using the same four words, the United States and New York constitutions declare “nor [shall] excessive fines [be] imposed.” (US Const 8th Amend; NY Const, art I, § 5.) Neither constitution further explains the concept. The Excessive Fines Clause is not limited to criminal prosecutions, but is applicable to civil proceedings where punishment is imposed. (United States v Bajakajian, 524 US 321, 337 [1998] [civil forfeiture]; Austin v United States, 509 US 602 [1993] [civil forfeiture].)
It appears that no court has explicitly held that the Excessive Fines Clause applies to fines imposed by an administrative agency. Several courts have assumed that the clause applies to regulatory penalties, and then held that the challenged fines were not constitutionally excessive. (See e.g. Qwest Corp. v Minnesota Pub. Utils. Commn., 427 F3d 1061 [8th Cir 2005]; Grid Radio v Federal Communications Commn., 278 F3d 1314 [DC Cir 2002].)
The Excessive Fines Clause was intended to protect individuals from abusive, unreasonably oppressive penalties imposed by government as punishment. (See United States v Emerson, 107 F3d 77, 80 [1st Cir 1997].) A fine is considered constitutionally excessive if (1) it constitutes payment to the government for an offense, and (2) the amount of the payment is “grossly disproportionate” to the gravity of the offense. (United States v Mackby, 243 F3d 1159, 1166 [9th Cir 2001], citing United States v Bajakajian, 524 US 321, 327-328 [1998].)
The Eighth Amendment has been held inapplicable to fines and sanctions “intended to secure compliance” (Kirsh v City of New York, 1995 WL 383236, *8, 1995 US Dist LEXIS 8896, *24 [SD NY, June 27, 1995]) and situations where the offending individual has the power to mitigate the accrual of fines or penalties. (See Kraebel v Michetti, 1994 WL 455468, *11, 1994 US Dist LEXIS 11796, *32 [SD NY, Aug. 22, 1994], affd 57 F3d 1063 [1995] [unpublished decision], citing Matter of Seril v New York State Div. of Hous. & Community Renewal, 205 AD2d 347, 347 [1st Dept 1994] [rejecting Eighth Amendment challenge to agency’s refusal to lift finding of tenant harassment where owner had option to take actions leading to termination of finding].)
As an initial matter, the City asserts that petitioners’ Eighth Amendment claim is premature or unripe, because petitioners do not allege imposition of excessive penalties under the schedule. Ordinarily, Eighth Amendment challenges arise in an as- *983 applied context, thus requiring, as a predicate for judicial review, “the imposition, or immediately impending imposition, of a challenged punishment or fine.” (Cheffer v Reno, 55 F3d 1517, 1523 [11th Cir 1995]; see also Kraebel v Michetti, 1994 WL 455468, *11, 1994 US Dist LEXIS 1196, *31 [SD NY 1994] [“Merely being potentially subject to fines, without an actual finding of liability, is not enough to state a claim for an Eighth Amendment violation”].) The ripeness doctrine “asks whether there is sufficient injury to meet [the] requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decision making by the court.” (Cheffer, 55 F3d at 1524, citing Johnson v Sikes, 730 F2d 644, 648 [11th Cir 1984].) To the extent that the individual petitioners, Moussa and Alali, do not allege that they have incurred penalties under the schedule, their individual claims are premature and factually insufficient.[2] They cannot be given the case-specific analysis required under United States v Bajakajian (supra).
Rather, the general claim petitioners bring on behalf of all street vendors is a facial challenge to the constitutionality of the schedule, whenever and however it is to be applied in the future. It appears essentially undisputed that many of the subject street vendors are unlicensed, routinely doing business outside of the law; that even licensed vendors have become accustomed to violating the law and paying low penalties as a cost of doing business; that the two-decade-old fine structure has not kept pace with the increase in vendors’ prices or the cost of living; and that the previous fine structure did not effectively encourage compliance with law, including significant health code provisions.
Reduced to its essence, petitioners’ argument is that the schedule is constitutionally excessive because street vendors will no longer be able comfortably to pay the fines as a cost of doing business. As a matter of law, such a claim fails to state a cause of action under the Excessive Fines Clause. Petitioners have not demonstrated that the fine structure is grossly disproportionate to the gravity of the offenses, including recidivism. Neither have they shown that the amounts of the fines are not reasonably related to the permissible goal of deterrence. (See Mackby, supra, 243 F3d at 1167.)
*984 Moreover, petitioners’ argument that the schedule is excessive because “many vendors testified to receiving multiple tickets in a single day” (petitioners’ mem of law at 10) appears based on a mistaken premise. Petitioners allege that multiple summonses received in a single day constitute a second, third, fourth or further subsequent offense triggering increased penalties under the schedule. The City represents here, as it represented to the Environmental Control Board, that multiple offenses on a single date are deemed aggregated as a single offense for the purpose of applying the escalating fine structure for subsequent offenses under the schedule. (See Macron affirmation HH 47-50, exhibits U, V) ECB’s long-standing interpretation of the applicable Administrative Code provisions and policies, as evidenced in ECB memoranda distributed to hearing officers from 1982 to date, provides: “If a Vendor is issued two or more NoVs [Notices of Violation] on one day, one NoV cannot be considered as a prior for any of the others issued on that day” and “[s]everal NoVs issued at one time, however, such as those resulting from a single inspection at one time, should not be counted as separate ‘priors.’ ” (Id.)
It cannot be said, as a matter of law, that the schedule facially imposes levels of punishment, even when enhanced because of subsequent recidivism, that exceed “that which is reasonable, usual, proper or just.” (See People v Saffore, 18 NY2d 101, 104 [1966].) Neither have petitioners demonstrated that the schedule, as written, is arbitrary or capricious. Accordingly, this branch of the petition must be denied.
II
New York City Charter § 1043 (e) (1) provides, in relevant part, that “[n]o rule shall be effective until ...(c) the rule and a statement of basis and purpose have been published in the City Record and thirty days have elapsed after such publication.” Petitioners contend that the June 20, 2005 notice failed to include the required statement of basis and purpose.
Insofar as it pertains to the schedule, the statement of basis and purpose of final rule, as it appears at the end of the June 20, 2005 notice, states:
“The Environmental Control Board is making the following revisions to the ECB Penalty Schedules: (1) After considering the many public comments received in connection with the hearing held on November 18, 2004, the Board is now including *985 within the ECB Penalty Schedules set out in Sub-chapter G of Chapter 31 of Title 15 of the Rules of the City of New York the penalty schedules relating to general and food vendor violations, by adding a Food Vendor Administrative Code Penalty Schedule; a General Vendor Penalty Schedule and also adding additional food-vendor related charges to the Health Code penalty schedule, and renaming that penalty schedule the Miscellaneous Food Vendor Violations Penalty Schedule.” (Macron affirmation, exhibit T, at 2806.)
This statement describes the action that the ECB is taking. It does not, however, even purport to state a purpose of that action. Moreover, to the extent that the statement refers to the “public comments received in connection with the hearing held on November 18, 2004,” it does not disclose that the ECB considered the public comments that were made at the April 18, 2005 hearing, the only hearing at which the schedule was addressed. (Cf. State Administrative Procedure Act § 202 [4-a] [pertaining to revised rules].) ECB may well have had good reasons to wish to increase the fines applicable to street vendors’ code violations. Nevertheless, neither the rule that ECB promulgated, nor the formulaic statement of “basis and purpose” that it appended to the published rule, discloses any indication of its reasons or the rule’s basis and purpose.
The City’s public policy, as set forth in CAPA, requires that city agencies may not adopt a rule without explaining the legal basis upon which the agency is acting and the purpose that the rule is intended to further. This policy serves, on a local level, to inform the public generally, and any reviewing court, that the agency conducted a legal process and had a rational basis for adopting the rule change. It reflects a basic principle of administrative law, articulated at both the federal and state levels in, respectively, the federal Administrative Procedure Act (see 5 USC § 553 [c]) and New York’s State Administrative Procedure Act (see State Administrative Procedure Act § 202 [5] [b], [c]). The purpose of a basis and purpose statement is “at least in part, to respond in a reasoned manner to the comments received, to explain how the agency resolved any significant problems raised by the comments, and to show how that resolution led the agency to the ultimate rule.” (Independent U.S. Tanker Owners Comm, v Lewis, 690 F2d 908, 919 [DC Cir 1982], citing Rodway v United States Dept. of Agrie., 514 F2d 809, 817 [DC Cir 1975].) A statement that is primarily descriptive, rather *986 than explanatory, is inadequate. (Id.; see also Matter of Medical Socy. of State of N.Y. v Levin, 185 Misc 2d 536 [Sup Ct, NY County 2000], affd 280 AD2d 309 [1st Dept 2001] [holding agency rule invalid, in part because of failure to elucidate proportion of favorable and unfavorable comments].)
The requirement that a rule-making administrative body give a reasoned explanation for its actions serves to discourage the promulgation of arbitrary rules. Moreover, a reasoned explanation is a precondition for judicial review of rules via an article 78 proceeding, because a reviewing court is limited to considering the reasons that an agency gives for its action, at the time that it takes the action. (Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753 [1991]; Matter of Montauk Improvement v Proccacino, 41 NY2d 913 [1977].) Here, ECB completely failed to give an explanation for its action; it did not reference the April 18, 2005 public hearing. The required publication in the City Record lacked a proper basis and purpose statement as required by CAPA. (NY City Charter § 1043 [e]). Accordingly, the schedule has not yet become effective. Until such publication in conformity with law, the schedule’s implementation is contrary to law. The defect is curable by a new, proper publication.
In view of the discussion above, this court need not reach petitioners’ other arguments. Because this court grants the petition in part as explained supra, the motion for a preliminary injunction is denied as moot.
Conclusion
Accordingly, it is hereby ordered and adjudged that the petition is granted only to the extent that the schedule is invalidated unless and until respondents comply with the publication directed by the second decretal paragraph (infra), and is otherwise denied; and it is further ordered and adjudged that the schedule of fine increases that respondent Environmental Control Board adopted on April 21, 2005, and caused to be published in the City Record on June 20, 2005, has not yet become effective; and respondents are permanently enjoined from implementing the schedule, including enforcing said schedule of fine increases against street vendors and from preventing any such vendor from renewing his or her vending license or permit due to a failure to pay such increased fines, unless and until respondents publish the proposed rule, including the schedule with a statement of basis and purpose in the City Rec *987 ord and 30 days have elapsed after such publication; however, nothing in this order shall prevent respondents from assessing the penalties that would have been assessed but for the June 20, 2005 increases, nor from refusing to renew vending licenses or permits for failure to pay such penalties as would have been assessed but for those penalty increases; and it is further ordered that until such new publication required by the preceding paragraph, respondents are permanently enjoined from enforcing the provisions of 15 RCNY 31-107 against any vendor whose license or permit was revoked or expired on, or since, July 20, 2005, unless such license or permit was revoked for reasons not related to the nonpayment of the increased penalties purportedly promulgated by the June 20, 2005 publication; and it is further ordered that petitioners are directed to serve a copy of this judgment and order together with notice of entry upon respondents within 20 days of entry; and it is further ordered that upon receipt of a copy of this judgment and order with notice of entry respondents shall within three days produce a letter from the New York City Law Department to the appropriate city agencies, annexing a copy of this judgment and order, and notifying those agencies that vending licenses and permits that have been revoked on, or since, July 20, 2005, for failure to pay the penalties set out in 15 RCNY 31-107, remain valid; and it is further ordered that respondents shall immediately upon receipt of said letter make copies of the letter available to petitioners’ counsel, and make copies of the letter and of this judgment and order available to the public at the New York City Licensing Center at 42 Broadway, 5th Floor, and at the offices of the Environmental Control Board at 66 John Street, 10th floor; and it is further ordered that petitioners’ motion for a preliminary injunction is denied as moot.

. Both sides seem to agree that the old fine structure provided for a low level of fines that was regarded as a cost of doing business and that did not deter subsequent violations.

. Compare the specific allegations made in the previous action as to the violations for which $1,000 fines had been imposed. (Ousmane v City of New York, 7 Misc 3d 1016[A], 2005 NY Slip Op 50634[U], *2 [Sup Ct, NY County 2005].)